IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICKEY ALLEN,                                    )
                                                 )
                    Plaintiff,                   )
                                                 )
         v.                                      )          No. 06 C 6606
                                                 )
DESTINY'S CHILD, et al.                          )
                                                 )
                    Defendants.                  )

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

        Plaintiff Rickey Allen ("Allen") alleges in his first amended complaint that in 1992 and

1993 he wrote the original music and lyrics to a song called "Cater 2 U."  Allen further alleges

that he subsequently performed this song on numerous occasions and obtained multiple

copyrights in relation to his song.

        In November 2004, defendants Beyoncé Giselle Knowles ("Knowles"), Kelendria (a/k/a/

Kelly) Rowland ("Rowland"), and Michelle Williams ("Williams"), known collectively as the

musical group "Destiny's Child," released an album ("Destiny Fulfilled") that included a song

with the title "Cater 2 U."

        On November 30, 2006, Allen filed this lawsuit against various defendants, including

Destiny's Child, Destiny's Child, Inc, Knowles, Beyoncé Publishing, Rowland, Kelendria Music

Publishing, Williams, MW Publishing, Sony BMG Music Entertainment, Sony Urban

Music/Columbia CK, Sony/ATV Tunes LLC, EMI Blackwood Music, Inc., and McDonald's

Corporation (referred to collectively as the "Destiny's Child Defendants"); Rodney Jerkins

Productions, Inc. and Rodney Roy Jerkins (referred to collectively as the "Jerkins Defendants"); Andrea Murray ("Murray"); Maurice Joshua;[1] Robert Waller, Robert Morrison (a/k/a Rob Diggy), and Ricky Lewis (a/k/a Ric Rude and Ricc Rude);[2] No Harm Publishing,[3] and Columbia Records—alleging one count of copyright infringement. Allen also brings claims against Murray for breach of contract and breach of agent's duty to principal.

Now pending before the court are the Destiny's Child Defendants' "Second Motion for Summary Judgment" (Dkt. No. 207), the Jerkins Defendants' "Motion for Summary Judgment" (Dkt. No. 197), Murray's "Motion for Summary Judgment" (Dkt. No. 200), and Allen's "Motion to Strike the Supplemental Affidavit of Rodney Jerkins and Citations to Same in Defendants' Reply Memoranda and Rule 56.1 Responses" (Dkt. No. 254).

## I.    BACKGROUND

Allen undisputedly is the author of his musical work alternately titled "Cater 2 U" or "I Want to Cater to You." Allen registered versions of this song with the U.S. Copyright Office under four different registration numbers: SRu 301-444 (the "1994 version"), PAu 2-255-971 (the "January 1998 version"), SRu 349-159 (the "September 1998 version"), and PAu 2-561-418 (the "2000 version") (referred to in this opinion jointly and severally as the "Allen Song").

Knowles, Rowland, Williams, Rodney Roy Jerkins ("Jerkins"), Robert Waller

---

[1] Maurice Joshua, who is proceeding pro se, was found to be in default on January 24, 2008. However, this default was vacated after Joshua filed his answer to Allen's first amended complaint on January 31, 2008.

[2] Robert Waller, Robert Morrison and Ricky Lewis were found to be in default on June 10, 2008.

[3] No Harm Publishing was found to be in default on April 5, 2007.

("Waller"), and Ricky Lewis a/k/a Ric Rude ("Rude") working collaboratively produced, recorded, published, and performed a song that is also titled "Cater 2 U" (the "DC Song"). The parties' key dispute in this case is whether the DC Song is copied from the Allen Song.

According to the Destiny's Child Defendants and the Jerkins Defendants, Rude composed the musical "bed" for the DC Song (the music over which the lyrics are sung) and gave a copy of the musical bed to Jerkins, Jerkins gave a copy of the musical bed to Knowles in the summer of 2004, and Knowles recommended to Rowland and Williams that Destiny's Child compose lyrics to go along with the musical bed provided by Jerkins. At the writing and recording session in 2004, Waller wrote the chorus to the DC Song, and Knowles, Rowland, and Williams composed the verses, the lead vocal melody, and the melody of the bridge. Jerkins was the producer of the DC Song. Maurice Joshua ("Joshua") later created a re-mix of the DC Song, after the original had been written, recorded, and commercially released.

Allen contends that Rude copied the musical bed from the Allen Song, Waller copied the chorus from the Allen Song, and the individual members of Destiny's Child did not "make any substantive change to the musical bed that Rude composed by copying Allen's work" and copied without change "[m]any of the lines within the lyrics." (Allen's 56.1(b)(3)(B) Resp. ¶ 66.) The lyrics of both the Allen Song and the DC Song refer to an individual desiring to relieve the stress of a significant other while "catering to" his or her needs and desires.

## II.   LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmovant's favor. *Omega Healthcare Investors, Inc. v. Res-Care, Inc.*, 475 F.3d 853, 857 (7th Cir. 2007). However, "[o]nce a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (quoting Fed. R. Civ. P. 56(e)). The court does not make credibility determinations or weigh conflicting evidence. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). Summary judgment will be granted in favor of the moving party if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### III.     THRESHOLD EVIDENTIARY ISSUES

At the summary judgment stage of federal civil litigation, the party bearing the burden of proof must come forward with admissible evidence demonstrating a disputed question of material fact. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009) ("To defeat a summary judgment motion . . . a party may rely only on admissible evidence."). The parties in this case dispute whether judicial admissions by certain defendants—specifically, Joshua, Waller, Rude, and Robert Morrison ("Morrison")—constitute admissible evidence when offered by Allen against the remaining defendants in the case.

4

A.    Joshua's Admissions

Joshua responded to Allen's first amended complaint by filing a pro se answer on January 31, 2008.  (Dkt. No. 140.)  Since that time, however, Joshua has not filed any further documents in this case.  Joshua also failed to respond to Allen's requests for admissions dated June 20, 2008.  Pursuant to Federal Rule of Civil Procedure 36, all matters set forth in the requests for admissions served on Joshua are deemed "admitted" by Joshua, meaning that they are "conclusively established unless the court, on motion, permits the admission[s] to be withdrawn or amended."  Fed. R. Civ. P. 36(a)(3), (b).  Rule 36 itself does not address whether one defendant's deemed admissions can be used against other defendants in the same case.  However, courts that have addressed this issue have concluded they may not.  *See Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997) ("Deemed admissions by a party opponent cannot be used against a co-party."); *Riberglass, Inc. v. Techni-Glass Indus., Inc.*, 811 F.2d 565, 566 (11th Cir. 1987) ("Clearly, the deemed admissions of his codefendants cannot bind Morris where he actually responded to plaintiff's requests in a timely and legally sufficient manner.").  This court joins in holding that a plaintiff cannot use one defendant's deemed admissions as evidence against a codefendant.  *See* Fed. R. Civ. P. 36(b), Advisory Committee Notes, 1970 Amendment ("In form and substance a Rule 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than to an evidentiary admission of a party.").  If Allen wanted to properly obtain Joshua's admissions concerning his own conduct or that of others to be used as evidence at trial against other defendants, he should have deposed Joshua and thereby obtained Joshua's testimony.  But as the record stands now, Allen cannot use Joshua's Rule 36 deemed admissions against the other defendants in this lawsuit, nor can the

court consider them on summary judgment. The court finds nothing improper with the remaining defendants using Joshua's testimony, through a sworn declaration, to refute Allen's contentions. The court cannot, however, while viewing the facts in the light most favorable to Allen, give weight to Joshua's declaration in ruling on defendants' motions for summary judgment.

B.    Waller's, Rude's, and Morrison's Default

The court turns to the further evidentiary issues relating to defendants Waller, Rude, and Morrison, who each failed to respond to Allen's first amended complaint after being served by publication, and were each found in default on June 10, 2008. Generally, "upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). However, this is so only insofar as such "admissions" pertain to the defaulting defendant. It has long been held that "[a] judgment against one Defendant for the want of a plea, or a decree against one Defendant for want of an answer, does not prevent any other Defendant from contesting, so far as respects himself, the very fact which is admitted by the absent party." *The Mary*, 13 U.S. 126, 143 (1815); *see also United States v. Borchardt*, 470 F.2d 257, 260 (7th Cir. 1972) (default judgment against taxpayer-grantor did not prevent grantees from raising their own defenses to a foreclosure action brought by the government); *Hawkeye-Security Ins. Co. v. Schulte*, 302 F.2d 174, 177 (7th Cir. 1962) (rejecting plaintiff's argument that "the allegations of the complaint are to be taken as true" against a non-defaulting defendant).

Allen argues that the admissions of Rude and Waller should be permitted as evidence

against the remaining defendants, because Rude and Waller were acting as agents or employees of Jerkins and Destiny's Child at the time their respective admissions were made. In *Walsh v. McCain Foods Ltd.*, the Seventh Circuit addressed a similar argument in the context of Rule 36 admissions. 81 F.3d 722, 726-27 (7th Cir. 1996). The Seventh Circuit noted that Rule 36 admissions can be used as evidence at trial only if offered against the party who made the admission. *Id.* at 726. This is because a party's admissions typically are hearsay when offered against another person but, when offered against the party making the admissions, the party's admissions are not excluded from the evidence at trial against the party making the admissions through the application of Federal Rule of Evidence 801(d)(2) as an "Admission by party-opponent." Fed. R. Evid. 801(d)(2). Taking this argument one step further, the defendant in the *Walsh* case argued that deemed admissions by a deceased plaintiff were also admissible against the remaining plaintiffs on the grounds that the deceased plaintiff was operating as an agent of the remaining plaintiffs at the time he made the admissions. *Walsh*, 81 F.3d at 726-27. The Seventh Circuit rejected this argument, finding that the deceased plaintiff was not operating as an agent at the time he made the admissions. *Id.* at 727. Relying on *Walsh*, Allen argues that he should be permitted to use the admissions of Rude and Waller as evidence against the remaining defendants in this case.

The initial problem with Allen's argument is that Rude's and Waller's respective deemed admissions do not conform easily to the legal principle that certain out-of-court statements by a party's agents are "trustworthy and reliable." *Hernandez Escalante v. Municipality of Cayey*, 967 F. Supp. 47, 51-52 (D.P.R. 1997) (reviewing admissibility of statements in a sworn affidavit).

Additionally, the general prohibition against using a defaulting party's admissions as evidence against other defendants who remain in the case is not grounded in concerns of an evidentiary nature. Rather, the United States Supreme Court noted back in 1815 that "*in reason and in justice*, [an entry of default] ought not to have prevented the District Court from looking into the testimony . . . so far as the rights of other Claimants depended on that interest." *The Mary*, 13 U.S. at 143 (emphasis added). As the Supreme Court explained, "[i]n the same cause, a fact, not controverted by one party, who does not appear, and therefore as to him taken for confessed, ought not, on that implied admission, to be brought to hear upon another who *does* appear, does controvert, and does disprove it." *Id.* (emphasis in original). The Supreme Court's reasoning in *The Mary* was based on issues of fairness, not reliability. There the Supreme Court stressed that the remaining defendant "was not culpable for, and therefore ought not to suffer for, the contumacy of [the defaulting party]." *Id.* For these same reasons, this court holds that Allen may not use the deemed admissions of Waller, Rude, or Morrison (*i.e.* the allegations of the first amended complaint) as evidence against the remaining defendants in this case.[4] Again, had Allen wished to use evidence of Waller's, Rude's, or Morrison's "admissions" against other defendants in the case, he was free to depose them during the discovery phase of this litigation and either call them as witnesses or, if any of them were unavailable at the trial, offer that party's deposition testimony.

---

[4] For the sake of completeness the court notes that Allen has not produced any evidence that the Jerkins Defendants or the Destiny's Child Defendants directed Rude, Waller, or Morrison not to respond to the first amended complaint, or otherwise controlled those defendants in their litigation decisions. In such a situation, it is possible that the balance of equities could lead to a different result.

C.    Jerkins' Supplemental Affidavit

As for the Jerkins' supplemental affidavit, the court finds that the supplemental affidavit of Jerkins dated April 22, 2009, and submitted by the Jerkins Defendants (Dkt. No. 241, Jerkins Reply Ex. A) and the Destiny's Child Defendants (Dkt. No. 252, DC Reply Ex. 39) in their respective replies, appropriately addressed new allegations raised for the first time by Allen in his amended response.  To the extent the court has considered Jerkins' supplemental affidavit in its analysis, the court finds that Jerkins' testimony is not inconsistent with his earlier declaration (Dkt. No. 208, DC Ex. 22 ("Jerkins Decl.")) and that it is within the scope of Jerkins' personal knowledge.  Allen's "Motion to Strike the Supplemental Affidavit of Rodney Jerkins and Citations to Same in Defendants' Reply Memoranda and Rule 56.1 Responses" (Dkt. No. 254) is therefore denied.

IV.    ANALYSIS

"To establish copyright infringement, one must prove two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  The Destiny's Child Defendants and the Jerkins Defendants each contend that, for a variety of reasons, Allen's copyright infringement claim can be decided as a matter of law and should not proceed to trial.  For the reasons stated below, the court disagrees.

A.    Copyright Claim Against Knowles, Rowland, Williams, and Jerkins

As individuals who took part in the creation of the DC Song, Knowles, Rowland, Williams, and Jerkins (the "Songwriter Defendants") do not dispute that Allen is the owner of a

valid copyright for purposes of their summary judgment motions. Instead, the Songwriter Defendants focus their argument on whether Allen has produced evidence of actionable copying of the original elements of his song. "Since it is virtually impossible to prove copying directly, this element is usually established circumstantially." *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1249 (11th Cir. 1999). "[C]opying may be inferred 'where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work.'" *JCW Invs., Inc.*, 482 F.3d at 915 (quoting *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 450 (7th Cir. 2001)). Once an inference of copying is established, a defendant can rebut the inference by "showing that [the defendant] independently created the allegedly infringing work." *Susan Wakeen Doll Co.*, 272 F.3d at 450.

1.      Access

Proof of access is an important component of the circumstantial evidence supporting an inference of copying. *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984). "The plaintiff may be able to introduce direct evidence of access when, for example, the work was sent directly to the defendant (whether a musician or publishing company) or a close associate of the defendant." *Id.* If direct evidence of access does not exist, "there must be at least some other evidence which would establish a reasonable possibility that the complaining work was *available* to the alleged infringer." *Id.* (emphasis in original). "[T]he jury cannot draw an inference of access based upon speculation and conjecture alone." *Id.*

It is undisputed that Allen has never offered for sale or publicly distributed any recorded version of the Allen Song. (DC Local R. 56.1(a)(3) Stmt. ¶ 3.) Allen testified, however, that he

provided copies of the Allen Song to both Joshua and Morrison.[5]  (Allen Local R. 56.1(b)(3)(B)
Resp. ¶ 4; Allen Local R. 56.1(b)(3)(C) Stmt. ¶ 7.)  Although Joshua denies ever receiving a
copy of the Allen Song (Dkt. No. 208, DC Ex. 11 ("Joshua Decl.") ¶ 4), the court views this
disputed fact in the light most favorable to Allen and accepts, as it must in ruling on the pending
motions for summary judgment, that both Joshua and Morrison had access to copies of the Allen
Song.  To support an inference of copying against the Songwriter Defendants, Allen must
establish from this fact a reasonable possibility that Joshua or Morrison made the Allen Song
available to the creators of the DC Song—Knowles, Rowland, Williams, Waller, Rude, and/or
Jerkins.

      Allen has produced no evidence demonstrating that Morrison was involved in the
development, writing, or recording of the DC Song, and Morrison has stated under oath that he
never met or communicated with Knowles, Rowland, Williams, Jerkins, Waller, or Lewis.  (DC
Local R. 56.1(a)(3) Stmt. ¶ 13.)  Any suggestion that Morrison provided the creators of the DC
Song with a copy of the Allen Song is without support in the evidentiary record and is pure
conjecture.

      Joshua, too, has stated under oath that he was not involved in the development, writing,
or recording of the DC Song.  (DC Local R. 56.1(a)(3) Stmt. ¶ 19.)  However, it is undisputed
that, sometime in 2000, 2001, or 2002, Knowles, Rowland, and Williams came into contact with
Joshua.  (Allen Local R. 56.1(b)(3)(C) Stmt. ¶ 14.)  At that time, the individual members of
Destiny's Child met with Joshua to re-record the vocals of a different Destiny's Child song so

---

[5] Allen also gave a version of the Allen Song to Murray; however, Allen concedes that
Murray did not provide a copy of the Allen Song to any of the Songwriter Defendants.

Joshua could make a remix version of that song.  (*Id.* ¶ 15.)  According to Allen's testimony, Allen had given Joshua a DAT[6] master copy of the September 1998 version of the Allen Song sometime between September 1998 and 2000.  (Dkt. No. 233, Allen Ex. A ("Allen Dep.") 74:17-76:13.)  It was therefore possible for Joshua to have provided a copy of the Allen Song, or a key part thereof, to Knowles, Rowland, and/or Williams when they met to record the remix, well before the Songwriter Defendants wrote and recorded the DC Song in the summer of 2004.

Knowles, Rowland, Williams, and Jerkins each deny that they ever received a copy of the Allen Song from any source (DC Local R. 56.1(a)(3) Stmt. ¶ 23; Jerkins Local R. 56.1(a)(3) Stmt. ¶ 28), and Joshua denies giving any of these individuals a copy of the Allen Song (DC Local R. 56.1(a)(3) Stmt. ¶ 21).  Complicating matters, Allen has admitted that the musical bed for the DC Song was provided by Rude, not Knowles, Rowland, or Williams.  (Allen Local R. 56.1(b)(3)(B) Resp. ¶ 62.)  On the other hand, Allen has emphasized that none of the individual members of Destiny's Child "has personal knowledge regarding how Rude 'composed' the musical bed for DC's Cater 2 U, or that he in fact obtained his material from somewhere other than Allen's Cater 2 U."  (Allen's Am. Resp. at 7 (citing Allen Local R. 56.1(b)(3)(C) Stmt. ¶¶ 10-12, 32-33, 36).)  The only evidence before the court regarding this creative process is Jerkins' supplemental affidavit, which explains that Jerkins "watched" Rude create the musical bed to the DC Song "us[ing] [Rude's] own musical talents and skills."  (Dkt. No. 241, Jerkins Reply Ex. A ("Jerkins Aff.") ¶¶ 12-13; *see also* Jerkins Local R. 56.1(b)(3)(C) Resp. ¶ 9.)  Knowles, Rowland, and Williams each testified that they did not know Rude was the individual who created the musical bed for the DC Song.  (Allen Local R. 56.1(b)(3)(C) Stmt. ¶ 36.)  Finally,

---

[6] "DAT" stands for "digital audio tape."  (Allen Dep. 76:12-13.)

Allen admits that Knowles came up with the idea to write the DC Song after listening to a radio program discussing the topic of African-American women catering to their men, and he does not dispute that Knowles, Rowland, and Williams have testified that they authored the lyrics to the verses and bridge of the DC Song. (Allen Local R. 56.1(b)(3)(B) Resp. ¶¶ 63, 66.)

On these facts, the court must decide whether Allen has come forward with "some [ ] evidence which would establish a reasonable possibility that the complaining work was available to the alleged infringer." *Selle*, 741 F.2d at 901 (emphasis omitted). To reach the conclusion that the Allen Song was available to the Songwriter Defendants, a jury would have to (1) credit Allen's testimony that he gave a copy of the Allen Song to Joshua, (2) discredit the testimony of Joshua, Knowles, Rowland, and Williams that the individual members of Destiny's Child did not receive a copy of the Allen Song from Joshua, (3) infer that one or more of the individual members of Destiny's Child gave Rude a copy of the Allen Song, (4) discredit Jerkins' testimony that he watched Rude independently create the musical bed for the DC Song, (5) discredit Knowles' testimony that she independently came up with the theme for the DC Song, and (6) discredit the testimony of Knowles, Rowland, and Williams that they wrote the lyrics to the verses and bridge of the DC Song.[7] When the evidence is viewed in the light most favorable to Allen, as the court must do in evaluating a motion for summary judgment, this chain of events is certainly not implausible. Whether Allen has established a *reasonable* possibility of access is a close call, the resolution of which hinges entirely on the credibility of the witnesses. Because courts are constrained in making credibility determinations at the summary judgment stage, the

---

[7] The court rejects Allen's alternative theories of access—through Mathew Knowles or through Jerkins' working association with Joshua—as speculative and unsupported by the record.

court holds that the factual question of access is material and disputed. In other words, a reasonable jury could find on these facts that Allen has established a reasonable possibility of access.

2. <u>Substantial Similarity</u>

To complete an inference of copying, Allen must also show that the DC Song is "substantially similar" to the Allen Song. *JCW Invs., Inc.*, 482 F.3d at 915. This is an objective question, requiring the court to consider "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005) (quoting *Atari, Inc. v. N.A. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982)). In other words, "[t]wo works are substantially similar if 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'" *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 509 (7th Cir. 1994) (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960)). The ordinary observer test "does not involve 'analytic dissection and expert testimony,' but depends on whether the accused work has captured the 'total concept and feel' of the copyrighted work." *Atari, Inc.*, 672 F.2d at 614 (citations omitted).

However, because "copyright laws preclude appropriation of only those elements of the work that are protected by the copyright," the court must separate the protectable elements of the work from those that are not protectable when applying the ordinary observer test. *Id.* at 614-15; *see also Incredible Techs., Inc.*, 400 F.3d at 1011. Only a substantial similarity between

protectable elements of the respective songs will support an inference of unlawful copying.

"Summary judgment historically has been withheld in copyright cases because courts have been

reluctant to make subjective determinations regarding the similarity between two works."

*Herzog*, 193 F.3d at 1247. "However, non-infringement may be determined as a matter of law

on a motion for summary judgment, either because the similarity between two works concerns

only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly

instructed, could find that the two works are substantially similar." *Id.*

a.     Protectable Elements

In this case, Allen argues that the Allen Song is protectable in its entirety as "an R&B

song in a minor key using a specific intervallic[8] structure and chord progression that describes

how the singer is going to cater to his significant other." (Allen's Am. Resp. at 21.)

Specifically, Allen invites the court to the use of "the idiosyncratic phrase 'cater to you'" in the

title and lyrics of both songs, "the premise of a heterosexual monogamous relationship with

interaction between the lovers in a private residential setting," lyrics in the DC Song which

"mirror Allen's expression and extrapolation of the concept," and the use of a falling third[9]

sequence in both songs. (*Id.* at 19-21, 23-24.) The Songwriter Defendants argue that these

elements are not protectable.

---

[8] An interval is the "difference in pitch between tones sounded simultaneously or
successively." Random House Webster's College Dictionary 706 (1995). The "intervallic
structure" of a song accordingly refers to the relationship of the notes in the song. (DC Local R.
56.1(a)(3) Stmt. ¶ 43.)

[9] A "falling third" refers to the movement from one note downward two steps on a
musical scale to the next note. (DC Local R. 56.1(a)(3) Stmt. ¶ 44.)

i.     Use of the Phrase "Cater 2 U" / "Cater to You" in Title and Lyrics

The most obvious similarity between the Allen Song and the DC Song is the fact that they share the same title ("Cater 2 U") and repeat the same phrase ("cater to you") prominently in the chorus of the song.  As a general matter, "[w]ords and short phrases such as names, titles, and slogans" cannot be registered for copyright protection.  37 C.F.R. § 202.1.  In fact, the Seventh Circuit has explicitly recognized that "the title [of a musical composition], in itself, is not subject to copyright protection."  *Wihtol v. Wells*, 231 F.2d 550, 553 (7th Cir. 1956).  On the other hand, the Seventh Circuit has also acknowledged that "the title of a copyrighted work should be taken into account when the same title is applied to a work copied from it."  *Id.*

Short phrases tend to be excluded from copyright protection because they do not demonstrate a sufficient amount of creative expression.  *See Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 711 (7th Cir. 1972) (short commercial phrase not protectable because it was not an "appreciable amount of original text") (quoting *Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.*, 266 F.2d 541, 544 (2d Cir. 1959)); *Tree Pub. Co. v. Warner Bros. Records*, 785 F. Supp. 1272, 1275 (M.D. Tenn. 1991) ("[w]hether a jury will afford [the lyric expression 'better class of losers'] copyright protection is an uncertain question" due to its "proximity to [the] raw idea" of both songs); *see also JCW Invs., Inc.*, 482 F.3d at 917 ("It is, of course, a fundamental tenet of copyright law that the idea is not protected, but the original expression of the idea is.")  Likewise, "[p]hrases and expressions conveying an idea typically expressed in a limited number of stereotyped fashions are not subject to copyright protection."  *Narell v. Freeman*, 872 F.2d 907, 911 (9th Cir. 1989).  Whether the phrase "cater to you" is protectable thus depends on whether a reasonable jury could find the phrase to be an original, expressive

element of the theme embodied in the Allen Song.

One measure of the originality of a phrase is the use of the same phrase in examples of prior art. *See Johnson v. Gordon*, 409 F.3d 12, 24 (1st Cir. 2005) (finding no copyright protection for the title/lyrics "You're the One for Me" where "hundreds of composers have registered songs capturing the same sentiment in the same verbiage"); *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 144 (2d Cir. 1998) (upholding district court's finding that the phrase "you've got to stand for something, or you'll fall for anything" was not protectable because it "enjoyed a robust existence in the public domain long before [plaintiff's lyricist] Tippin employed it for his song's title and in the key lyrics."). Authors who rely on public sources for their inspiration are not liable for copyright infringement. *Selle*, 741 F.2d at 901 (if "both works were copied from a common source in the public domain, then there is no infringement").

In this case, the Destiny's Child Defendants assert that "there are [at] least seven other copyrighted songs containing the phrase ["cater to you"], three of which predate the earliest version of the Allen Song." (DC Mem. at 19.) Allen objects to this assertion on the grounds that the evidence presented by the Destiny's Child Defendants is unreliable. (Allen 56.1(b)(3)(B) Resp. ¶ 53.) In support of their position, the Destiny's Child Defendants offer the testimony of their expert, Anthony Ricigliano, who examined lyrics that he found on the Internet (through sites such as lyrics.com, Google, or www.azlyrics.com) and compared them to the corresponding audio version of the same song, which he found on iTunes. (Dkt. No. 208, DC Ex. 30 ("Ricigliano Tr.") 185:6-189:4; 194:24-199:16.) Copies of some of these lyrics are found at Exhibit 32 to the Destiny's Child Defendants' Local Rule 56.1(a)(3) Statement. None of the lyrics include a date of copyright or publication, and Ricigliano admits that he would "need to do

some further research" to find out when the songs were written. (Ricigliano Tr. 187:18-21; 189:3-4; 196:9-10; 198:6-8.) Without dates, or any authentication of the lyrics themselves, the songs' function as "prior art" is significantly limited.

The theme of both songs is one of "relieving the stress from the significant other and getting them to relax." (Allen Local R. 56.1(b)(3)(C) Stmt. ¶ 53.) On the evidentiary record now before it, the court declines to find as a matter of law that no reasonable jury could find the phrase "cater to you" to be an original expression of the theme set forth in the Allen Song.

ii.  Setting

"[C]opyright protection does not extend to ideas, plots, dramatic situations, and events." *Scott v. WKJG, Inc.*, 376 F.2d 467, 469 (7th Cir. 1967). To the extent Allen asserts that the "premise of a heterosexual monogamous relationship with interaction between the lovers in a private residential setting" is itself a protectable element of the Allen Song (Allen Am. Resp. at 19), he is incorrect.

iii.  Lyrics

Allen also asserts that "the lyrics of DC's Cater 2 U go beyond mimicking just the 'concept' of Allen's Cater 2 U and mirror Allen's expression and extrapolation of the concept." (Allen Resp. at 19.) Unfortunately, the record on this point is quite murky, as the court does not have before it any reliable source of printed lyrics of the Allen Song. The only printed lyrics of the Allen Song in the record are from the 1994 version, the January 1998 version, the 2000 version, and an unregistered 1996 version of the Allen Song. (*See* Dkt. No. 233, Allen Ex. B.) As explained above, however, evidence of access in this case stems from Joshua's access to *the September 1998 version* of the Allen Song. Thus, it appears the court is missing a printed

version of the specific "expression and extrapolation of the concept" employed in the relevant version of the Allen Song.

On the other hand, the Songwriter Defendants do not dispute that both songs refer to the significant other feeling stressed because of work, preparing a hot bath for the significant other, massaging the significant other, and the interaction between the lovers in bed. (Allen Local R. 56.1(b)(3)(C) Stmt. ¶¶ 54-57.) Listening to the audio recordings of the Allen Song and the DC Song (DC Exs. 4, 6, 7),[10] the court has been able to ascertain the following lyrical similarities as asserted by Allen (Allen Am. Resp. at 19-21) and as corrected to reflect the lyrics actually present in the September 1998 version of the Allen Song:

| Allen Song (Sept. 1998 version) | DC Song |
| --- | --- |
| "I want to cater to you" | "I want to cater to you"<br><br>"Let me cater to you"<br><br>"I want to cater to my man" |
| "I know the job has you stressed, no doubt . . . So hurry home to my open arms<br><br>And let me relieve you with my love and<br><br>charms" | "Baby I'm happy you're home,<br><br>Let me hold you in my arms<br><br>I just want to take the stress away from you" |

[10] The court has listened to the certified copy of the September 1998 version (on file with the Clerk's Office as Exhibit 4 to Docket Number 175 (the Destiny's Child Defendants' memorandum in support of their first motion for summary judgment)), as well as the uncertified copies filed as Exhibits 4 and 6 to the Destiny's Child Defendants' pending motion for summary judgment. All three versions appear to start in mid-phrase, with the opening line "...nice firm embrace."

| | |
|---|---|
| "The tub has hot steam rising<br><br>And I'm waiting to soak your body through" | "Let me run your bath water<br><br>Whatever you desire, I'll aspire" |
| "I want to rub you down" | "Want a foot rub?" |
| "I'm going to do whatever needs to be done<br><br>for you, baby" | "Whatever you desire, I'll aspire"<br><br>"Do anything for my man"<br><br>"Anything you want"<br><br>"Boy is there something you need me to do<br><br>. . . I know whatever I'm not fulfilling<br><br>Another woman is willing" |
| "It only gets bad baby to make the better<br><br>come out" | "Through the good<br><br>The bad<br><br>The ups and downs<br><br>I'll still be here for you" |
| "I want to love you over and over again<br><br>baby"<br><br>"I want to kiss your body baby<br><br>I want to make sweet love" | "I got your slippers, your dinner, your<br><br>dessert, and so much more"<br><br>"When you come home late tap my on my<br><br>shoulder, I'll roll over<br><br>Baby I heard you, I'm here to serve you"<br><br>"Fulfill your every desire<br><br>Your wish is my command" |

As previously stated, the theme of both songs is one of "relieving the stress from the significant other and getting them to relax." (Allen Local R. 56.1(b)(3)(C) Stmt. ¶ 53.) "[I]ncidents, characters or settings which are as a practical matter indispensable, or at least

standard, in the treatment of a given topic" are not protectable. *Incredible Techs., Inc.*, 400 F.3d at 1011-12 (describing the *scènes à faire* doctrine). However, the Allen Song creates a particular expression of how he wants to relieve his significant other's stress (e.g. a hot bath, massage, embrace, love making, and catering to his significant other's every need in a home setting). The DC Song includes each of these elements in its treatment of the same theme. While some of Allen's descriptions may be standard expressions of his theme when standing alone, the combination of *all* of these elements may be sufficiently original so as to be protectable under copyright law. Because reasonable minds could come to different conclusions on the question of whether the lyrics to the Allen Song constitute *scènes à faire*, the court declines to find as a matter of law that the lyrics to the Allen Song are inherently unprotectable.

iv.     Falling Third Intervallic Structure

Lastly, Allen argues that a particular three-note phrase from the "hook" of the Allen Song was copied into the opening melodic material and bass line of the DC Song, "control[ling] the four-chord harmonic progression of the entire song." (Allen Am. Resp. at 23.) The musical phrase at issue is represented in the following transcriptions of both songs:[11]

---

[11] No sheet music or official transcription of either song has been provided to this court in the record in this case. Both experts, Anthony Ricigliano (Destiny's Child) and Dr. Robert Fink (Allen) have created their own transcriptions of certain portions of the Allen Song and the DC Song, which are included in their respective reports. At times, these transcriptions differ from one another. Viewing the evidence in the light most favorable to Allen, the court relies on Dr. Fink's transcriptions for purposes of its current analysis. (Dkt. No. 208, DC Ex. 27 ("Fink Report").) To facilitate comparison of the two songs, Dr. Fink transposed the DC Song "up one semitone so as to match its pitch level" to the Allen Song and reduced the note values of the DC Song "50% from those used in the published version of the song." (Fink Report ¶ 9.)



FIG. 1



FIG. 2 (original one semitone lower)

In analyzing musical compositions, the court is "mindful of the limited number of notes and chords available to composers and the resulting fact that common themes frequently reappear in various compositions, especially in popular music." *Gaste v. Kaiserman*, 863 F.2d 1061, 1068 (2d Cir. 1988). Again, the court emphasizes that authors who rely on the public domain as a source for their inspiration are not liable for copyright infringement. *Selle*, 741 F.2d at 901.

Of course, a unique combination of common themes could be a protectable song element. For example, the court in *Bright Tunes Music Corp. v. Harrisongs Music, Ltd.* examined the protectability of two "very short basic musical phrase[s]" combined together in the chorus of the 1962 song "He's So Fine" (recorded by the singing group "the Chiffons"). *Bright Tunes Music Corp. v. Harrisongs Music, Ltd.*, 420 F. Supp. 177, 178 (S.D.N.Y. 1976). The court first noted

that neither "motif A" (composed of the three notes "sol-mi-re") nor "motif B" (composed of the five notes "sol-la-do-la-do") was novel in and of itself. *Id.* However, the court concluded that "the four repetitions of A, followed by four repetitions of B, is a highly unique pattern." *Id.* (stating in a footnote that "[a]ll the experts agreed on this"). Because the song "My Sweet Lord" (composed in 1970 by George Harrison) included "motif A used four times, followed by motif B, four times in one case, and three times in the other, with the same grace note in the second repetition of motif B," the court concluded that the songs were "virtually identical except for one phrase" and that Harrison had committed copyright infringement. *Id.* at 180-81. The trial court's ruling on the question of infringement was not appealed.

In this case, Allen alleges that the Songwriter Defendants copied a specific three-note phrase (comparable in length to "motif A" in *Bright Tunes Music Corp.* discussed above) that appears in the "hook" of the Allen Song. This musical phrase is recognizable, in part, by the "falling third" between the first and second notes. However, Allen admits that "[t]he intervallic structure identified by Fink which contains a falling third is a musical gesture so common that it is a basic ingredient of music composition." (DC Local R. 56.1(a)(3) Stmt. ¶ 45.) There is no evidence before the court to suggest that Allen's three-note phrase is itself protectable as a novel creation, and Allen does not argue that such evidence exists. Nor does Allen contend that the three-note phrase has been combined with a second common musical phrase in a unique manner. Rather than explaining why his three-note phrase should be considered protectable, Allen instead focuses his argument on where and how the same three-note phrase appears in the DC Song. (*See* Allen Am. Resp. at 23-24.) Allen does not offer any legal authority for this court to consider that the location of a single, common three-note sequence in a musical composition is

sufficient to support a finding of protectability in the context of alleged copyright infringement.

Consequently, this court holds that no reasonable jury could find that the three-note phrase in the Allen Song is  sufficiently unique in and of itself so as to be considered an original expression, the court finds this phrase to be unprotectable as a matter of law.

b.      Ordinary Observer Test

Having filtered out the unprotectable elements of the Allen Song, the court must now answer the question of whether the ordinary observer would find the lyrics of the Allen Song and the lyrics of the DC Song to be "substantially similar."  It is undisputed that Dr. Fink acknowledged that the two songs "do not sound, at first listen, very much alike."  (DC Local R. 56.1(a)(3) Stmt. ¶ 24.)  However, it is clear from the context of Dr. Fink's statement that he is speaking of the musical elements of the songs, not the lyrics.  (Fink Report ¶ 5 (discussing the songs' keys, tempos, beats, structures, and melodies).)  It is also undisputed that a music teacher consulted by Allen, Aubrey Rivers, stated that the rhythmic and lyrical similarities between the songs "may not be noticeable or detected by the average listener."  (Jerkins Local R. 56.1(a)(3) Stmt. ¶ 12.)  While this may be some evidence of the average listener's reaction, the court is not persuaded that this particular witness is competent to speak on behalf of the average listener. The question of "whether the accused work has captured the 'total concept and feel' of the copyrighted work," *Atari, Inc.*, 672 F.2d at 614 (citation omitted), is best left for a jury to decide.

3.      Independent Creation

Once an inference of copying is established, a defendant can rebut the inference by "showing that [the defendant] independently created the allegedly infringing work."  *Susan Wakeen Doll Co.*, 272 F.3d at 450; *see also Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167,

1169 (7th Cir. 1997) ("The Copyright Act forbids only copying; if independent creation results in an identical work, the creator of that work is free to sell it.").  In this case, the individual members of Destiny's Child have each testified as to the circumstances under which they claim to have written the lyrics to the DC Song.  *See* Part I.A. *supra*.  However, the Songwriter Defendants have not come forward with any objective evidence of this process, despite the fact that all three individual members of Destiny's Child testified that they wrote draft lyrics on paper during the creative process.  (Allen Local R. 56.1(b)(3)(C) Stmt. ¶¶ 25-27, 29.)  Because the defense of independent creation depends on a determination of the credibility of Knowles, Rowland, and Williams, the court cannot find that the Songwriter Defendants prevail in this defense as a matter of law.

B.  <u>Vicarious Liability of Remaining Defendants</u>

The Destiny's Child Defendants argue that summary judgment on Allen's vicarious liability copyright infringement claim against Sony Music Entertainment (successor-in-interest to Sony BMG Music Entertainment and incorrectly sued as Sony Urban Music/Columbia CK), Sony/ATV Tunes LLC, EMI Blackwood Music, Inc., and McDonald's Corporation is appropriate "[b]ecause Allen cannot raise a genuine issue of material fact as to his claim for direct infringement against the Songwriter Defendants."  (DC Mem. at 22.)  Based on the court's above analysis, this argument is without merit.

C.  <u>Claims Against Andrea Murray</u>

At the outset of this section, the court notes that Allen has voluntarily withdrawn his copyright infringement claim against Murray.  (Allen Resp. at 26.)  Count I is therefore dismissed with prejudice as it pertains to Murray.

In his first amended complaint, Allen also includes claims for breach of contract (Count II) and breach of fiduciary duty (Count III) against Murray. Specifically, Allen alleges that Murray "entered into an agreement with Allen for valuable consideration to promote Allen's music career with her connections in the music industry and others who might advance Allen's career" and that "Murray breached the agreement with Allen by allowing or facilitating others' use of the Copyrighted Song without permission from or compensation to Allen." (1st Am. Compl. ¶¶ 106, 111.) Similarly, Allen alleges that, as his agent, Murray breached her fiduciary duty to Allen "by giving a recording of the Copyrighted Song to one or more of the members of Destiny's Child or one of their close associates or otherwise provided access to the Copyrighted Song without Allen's permission." (*Id.* ¶ 118.)

In his response, Allen does not attempt to defend these claims against Murray's argument that they are preempted by § 301 of the Copyright Act. (*See* Murray Mem. at 11.) Instead, he sets forth a new theory of breach of contract. Allen now argues that Murray breached their agreement as evidenced by the fact that she lost her taped copies of the Allen Song, thus making her unable to effectively promote him. (Allen Resp. at 27.)

Even if the court were to accept this late change in Allen's position, Allen still cannot prevail on his claims based on the evidence in the record before the court. As noted by Murray, "Allen has offered no evidence to suggest that if Murray had agressively promoted him and even if the alleged infringement had never occurred, the Allen Song would have been a hit." (Murray Mem. at 13.) It is also undisputed that Allen never paid any compensation to Murray. (Murray Local R. 56.1(a)(3) Stmt. ¶ 89.) Without damages, Allen has no viable breach of contract or breach of fiduciary duty claim against Murray. *See Fabrica de Tejidos Impreial, S.A. v. Brandon*

*Apparel Group, Inc.*, 218 F. Supp. 2d 974, 976 (N.D. Ill. 2002) (setting forth elements of breach

of contract claim); *LaFlamboy v. Landek*, 587 F. Supp. 2d 914, 950 (N.D. Ill. 2008) (setting forth

elements of breach of fiduciary duty claim).  Accordingly, Murray's motion for summary

judgment is granted and judgment is entered in favor of Murray on Counts II and III of the first

amended complaint.

## V.     CONCLUSION

For the reasons set forth above, Count I is dismissed with prejudice insofar as it pertains

to defendant Andrea Murray.  Murray's "Motion for Summary Judgment" [200] is granted as to

Counts II and III, and judgment is entered in Murray's favor on these counts.  Allen's "Motion to

Strike the Supplemental Affidavit of Rodney Jerkins and Citations to Same in Defendants' Reply

Memoranda and Rule 56.1 Responses" [254], the Destiny's Child Defendants' "Second Motion

for Summary Judgment" [207], and the Jerkins Defendants' "Motion for Summary Judgment"

[197] are each denied.

ENTER:

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: July 21, 2009

27